**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Miguel Randy Saenz,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-24-01555-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Miguel Randy Saenz's appeal from the Commissioner of the Social Security Administration's ("SSA," "Commissioner," or "Defendant") denial of Social Security benefits. (Doc. 13-3), Plaintiff's Opening Brief (Doc. 18), and Defendant's Answering Brief. (Doc. 21). The Court now rules.

**I. BACKGROUN\D**

 **A. Factual Overview**

Plaintiff was 43 years old on his alleged disability onset date, and he has a high school education. (Doc. 18 at 2). He has past relevant work as a director of technical training and as a photographer. (Doc. 13-3 at 40). Plaintiff filed his Social Security Disability Insurance (SSDI) benefits application on April 23, 2021, initially alleging disabilities beginning on March 23, 2019. (*Id.* at 32). During an administrative hearing, Plaintiff amended his alleged onset date to August 1, 2021. (Doc. 18 at 5). After the administrative hearing, the ALJ denied Plaintiff's claim on December 28, 2023. (Doc. 13-3 at 41). The SSA Appeals Council denied a request for review of that decision and adopted

the ALJ's decision as the agency's final decision on April 23, 2024. (Doc. 18 at 3).

### A.     The SSA's Five-Step Evaluation Process

To qualify for Social Security Disability Insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities;" and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is his ability

perform physical and mental work activities "despite his limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "his past relevant work." *Id*. §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the final step, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### B. The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that the record established that Plaintiff had "not engaged in substantial gainful activity since March 23, 2019, the alleged onset date." (Doc. 13-3 at 32).

At Step Two, the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, status post lumbar fusion surgery; migraine headaches, treated with topiramate; and obesity." (*Id.* at 33).

At Step Three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment in Appendix 1 to Subpart P of 20 C.F.F. Part 404. (*Id.* at 34). Subsequently, the ALJ determined that Plaintiff had the RFC to:

>lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for two to four hours in an 8-hour workday and sit up to eight hours in an 8-hour workday. He is unable to kneel, crouch, or crawl. He is able to occasionally climb ladders, ropes, scaffolds, ramps and stairs, balance, and stoop.

(*Id.* at 35).

At Step Four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (*Id.* at 40). At Step Five, the ALJ found that Plaintiff could make sufficient adjustments to perform a significant number of jobs in the national economy given his age, education, work experience, and RFC. (*Id.*) Examples of such jobs included personal clerk, benefits clerk 2, and information clerk. (*Id.* at 41). Accordingly, the ALJ concluded that Plaintiff was not disabled, "as defined in the Social Security Act, from March 23, 2019, through the date of [the] decision." (*Id.*)

## II.   LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial" evidence involves "more than a mere scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d

1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if, despite the legal error, 'the agency's path may reasonably be discerned ....'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted).

### III. DISCUSSION

Plaintiff appeals the SSA's denial of Social Security benefits, alleging the ALJ's findings are unsupported by substantial evidence because: (1) the ALJ based his decision on evidence from prior to Plaintiff's amended alleged onset date; (2) the ALJ did not properly evaluate the "persuasiveness" of medical opinions of record when making his RFC determination; and (3) the ALJ did not meet his burden at Step Five to show that a significant number of jobs exist in the national economy that Plaintiff could perform despite his limitations. (Doc. 18 at 1–2). The Court considers each claim in turn.

#### A. Amended Alleged Onset Date

Plaintiff claims that the ALJ erred because he based his decision regarding Plaintiff's non-disability determination "on evidence prior to the established amended alleged onset date." (Doc. 18 at 4). Here, Plaintiff amended the alleged onset date of his disability to August 1, 2021, at the administrative hearing. (Doc. 13-3 at 50). While the ALJ acknowledged Plaintiff's request to amend the alleged onset date at the hearing, in his decision, the ALJ adjudicated the period running from Plaintiff's original alleged onset date of March 23, 2019, through December 28, 2023, the date of the decision. (*Id.* at 32, 41). Plaintiff argues that evaluation of the evidence beginning on the original alleged onset

- 5 -

date "constitutes harmful legal error," stating that had the ALJ instead evaluated the evidence "beginning on the [amended alleged onset date]," this "could have altered the outcome of the case." (Doc. 18 at 5).

The Court recognizes that the ALJ incorrectly listed the alleged onset date as March 23, 2019, and failed to acknowledge the amended alleged onset date of August 1, 2021, in his decision. However, fundamentally, the ALJ's conclusion—that Plaintiff "has not been under a disability, as defined in the Social Security act, from March 23, 2019, through the date of [the] decision[, December 28, 2023]"—necessarily includes the finding that Plaintiff was not under a disability from August 1, 2021 through December 28, 2023. As such, the ALJ's decision sufficiently addresses the period of disability Plaintiff alleges.

Furthermore, as Defendant notes, Plaintiff does not explain how the change in his alleged onset date would alter the ALJ's findings at any point in the five-step sequential evaluation process, "nor does [Plaintiff] compare any evidence before August 2021 with evidence after August 2021." (Doc. 21 at 6). It is Plaintiff's burden to show harmful error. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). An error is harmful only when it is consequential "to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Though Plaintiff suggests the ALJ erred in relying on evidence prior to the amended alleged onset date of August 1, 2021, there is no indication that the pre-amended onset date evidence is entirely irrelevant to an understanding of Plaintiff's functioning since the amended alleged onset date. Further, there is nothing to show that the ALJ excluded evidence relevant to Plaintiff's amended alleged onset date by using the original alleged onset date, nor that he gave undue weight to evidence prior to the amended alleged onset date. Moreover, the SSA regulations direct an ALJ to base his determination on a review of the *entire* record. *See* 20 C.F.R. §§ 404.1520(a)(3), 404.1545(a)(1). Consequently, while medical evidence that predates the alleged onset date may be of limited value, *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2009), reliance on this evidence does not automatically constitute error.

Thus, Plaintiff has failed to demonstrate that the ALJ's use of the original onset date

as the start of the adjudication period was ultimately consequential to the non-disability determination. Accordingly, the Court finds that any error on the part of the ALJ in failing to acknowledge Plaintiff's amended alleged onset date was harmless and does not warrant reversal. *See Molina*, 674 F.3d at 1111 ("we may not reverse an ALJ's decision on account of an error that is harmless").

### B. Medical Opinion Evidence

Plaintiff argues that the ALJ committed harmful legal error by failing to properly evaluate "medical opinions of record for 'persuasiveness' in accordance" with SSA rules and regulations. (Doc. 18 at 6).

#### 1. Legal Standard for Evaluation of Medical Opinions

Previously, under the "treating physician rule," courts in the Ninth Circuit distinguished among treating physicians, examining physicians, and non-examining physicians, with the greatest weight generally given to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Regula v. Delta Family-Care Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001), *cert. granted, vacated sub nom. Regula v. Delta Family-Care Disability & Survivorship Plan*, 539 U.S. 901 (2003). However, in March 2017, the SSA amended their regulations, and among other changes, abrogated the treating physician rule. *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, *5852–57 (Jan. 18, 2017)). Consequently, these amended regulations govern all claims filed on or after March 27, 2017. (*Id.*) The amended regulations forbid an ALJ to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from ... medical sources." 20 C.F.R. §§ 404.1520c, 416.920c.

Additionally, the amended March 2017 SSA regulations require an ALJ to "consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent

with the evidence from other sources." *Alonzo*, 2020 WL 1000024, at *3. The two "most important factors" are supportability and consistency, and the ALJ must explain how, given these two factors, he considered the evidence for a medical source's opinions. 20 C.F.R § 404.1520c(b)(3).

Moreover, the Ninth Circuit recently determined that in cases falling under the March 2017 amended SSA regulations, the "specific and legitimate" standard is also no longer applicable. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In *Woods*, the Ninth Circuit concluded the following: "Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations." *Id.* (quotations and internal citations omitted). Thus, it is not required that an ALJ provide "specific and legitimate reasons" to reject a treating physician's assessment. *Id.* at 791.

As discussed previously, the ALJ, not the reviewing court, is responsible for resolving any conflicts or ambiguities within the medical testimony and medical record. *See Andrews*, 53 F.3d at 1039. In effect, when more than one rational interpretation could emerge from the evidence of record, "the ALJ's decision must be upheld." *Orn*, 495 F.3d at 630; *see also Matney v. Sullivan*, 981 F.2d 1015, 1019 (9th Cir. 1992) (citations omitted) ("if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

### 2. The ALJ's Evaluation of Dr. Hassman's Medical Opinion

Plaintiff claims that the ALJ did not evaluate "medical opinions of record for 'persuasiveness'" in accordance with SSA regulations. (Doc. 18 at 6). However, as Defendant points out, "the only medical opinion whose consideration Plaintiff contests with specificity" is that of Dr. Jeri Hassman. (Doc. 21 at 9). Namely, Plaintiff states that the ALJ failed to provide objective medical evidence in support of his finding that Dr.

Hassman's opinion was "only partially persuasive." (*Id.* at 9). Conversely, Defendant claims that the ALJ's findings were "based on substantial evidence, including the … reasons for deviating from Dr. Hassman's opinion." (Doc. 21 at 9).

Regarding Dr. Hassman's medical opinion, the ALJ wrote the following:

> Physical medicine consultative examiner, Dr. Jeri Hassman, examined the claimant in May 2022. Dr. Hassman found that the claimant is able to lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk two to four hours in an 8-hour workday, and sit without limitations. He required the use of an assistive device, and it was necessary for uneven terrain. He had limited hearing. He is unable to kneel, crouch, or crawl. He is able to occasionally climb ladders, ropes, scaffolds, ramps and stairs (Exhibit 4F). The record also does not support Dr. Hassman's finding that the claimant require[s] the use of an assistive device. Although it was noted that the claimant had occasionally antalgic gait, the record reveals that the claimant generally had normal gait (Exhibits 6F, 9F, 16F/78-84, 90-97, 103-104, 107-114, 125-132, 141-144, 147-155, 165-172, 178-185). The remainder of Dr. Hassman's opinion is consistent with and supported by the record as a whole. Accordingly, the undersigned finds Dr. Hassman's opinion partially persuasive.

(Doc. 13-3 at 38).

Here, in the Court's interpretation, the ALJ found Dr. Hassman's medical opinion to be "consistent with and supported by the record as a whole"—with the exception of Dr. Hassman's finding that Plaintiff "require[s] the use of an assistive device." (*Id.*) The ALJ stated the record did not support this particular finding, leading the ALJ to conclude that Dr. Hassman's opinion, on the whole, was partly— not fully— persuasive. *Id.* Thus, the relevant issue is whether the ALJ provided substantial evidence to support his finding that the record is inconsistent with Dr. Hassman's opinion that Plaintiff requires an assistive device for ambulation.[1]

---

[1] Despite the ALJ's wording, "the record does not *support* Dr. Hassman's finding that claimant require[s] the use of an assistive device," (Doc. 13-3 at 38) (emphasis added), in the Court's view, this statement applies to the ALJ's consistency analysis, not the supportability analysis, given that the records concerning "normal gait" to which the ALJ

As to Plaintiff's claim that "the ALJ did not provide objective medical evidence" in support of his finding, the Court disagrees. Here, the ALJ provided support by recounting specific objective data in the record that contradicts Dr. Hassman's opinion that Plaintiff requires an assistive device to ambulate. To wit, directly following his statement that the record "does not support Dr. Hassman's finding that the claimant require[s] the use of an assistive device," the ALJ then stated, "[a]lthough it was noted that the claimant had occasionally antalgic gait, the record reveals that the claimant generally had normal gait." (Doc. 13-3 at 38). The ALJ next cited multiple medical records evidencing Plaintiff's normal gait, including (1) Exhibit 6F—Emergency Department Notes from Yuma Regional Medical Center, dated October 5, 2022, describing Plaintiff's gait as: "heel-to-shin intact and symmetric bilaterally" (Doc. 14-1 at 6); (2) Exhibit 9F— Progress Notes from Desert Spine Institute, dated May 18, 2023, stating Plaintiff "[w]alks with a normal heel-toe gait" (Doc. 14-1 at 46); and (3) Exhibit 16F—Progress Notes from Tucson Pain Institute, dated between June 1, 2022 and May 18, 2023, describing: "normal gait, able to stand without difficulty, no orthosis." (Doc. 16-5 at 83, 96, 113, 131, 153, 171, 184).

These treatment notes comprise substantial objective medical evidence showing that Dr. Hassman's opinion that Plaintiff requires an assistive device for ambulation is inconsistent with other sources in the medical record. This is a valid reason for the ALJ to reject this particular portion of Dr. Hassman's medical opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (affirming the ALJ's rejection of a medical opinion that was inconsistent with objective medical evidence in the record).

Plaintiff also states that "if the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." (Doc. 18 at 7) (quoting SSR 96-8p). Defendant notes, and the Court agrees, that Dr. Hassman's opined limitations are essentially identical to the RFC except for Dr. Hassman's opinion

---

cites come from other providers and do not include Dr. Hassman's own treatment notes. (Exs. 6F, 9F, 16F/78–84, 90–97, 103–04, 107–14, 125–32, 141–44, 147–55, 165–72, 178–85); *see* 20 C.F.R. § 404.1520c(c)(1) (stating, in regard to the supportability factor: "The more relevant objective medical evidence and supporting explanations *presented by a medical source* are to support his ... medical opinions ... the more persuasive the medical opinions ... will be.") (emphasis added).

that Plaintiff requires an assistive device for ambulation (addressed above), and her opinion that Plaintiff has "limited hearing." (Doc. 21 at 9; Doc. 13-3 at 38). The ALJ addressed Dr. Hassman's findings concerning Plaintiff's hearing loss earlier in the written decision, at Step Two:

> Physical medicine consultative examiner, Dr. Jeri Hassman, examined the claimant in May 2022 and found that the claimant complained of tinnitus and bilateral hearing loss, but was able to hear without hearing aids (Exhibit 4F). The record also reveals no evidence of any complications as a result of the claimant's … tinnitus and hearing loss. Consequently, the undersigned finds that the claimant's … tinnitus, and hearing loss have not resulted in any significant limitation in [his] ability to do basic work activities and are, therefore, 'non-severe impairments' for the purposes of this decision.

(Doc. 13-3 at 33).

Here, the ALJ highlighted Dr. Hassman's finding that during her examination, Plaintiff was able to hear without hearing aids. (*Id.*) This finding contradicts Dr. Hassman's opined limitation that Plaintiff has "limited hearing" (*Id.* at 38), and as such, it serves as substantial evidence to support the ALJ's rejection of this portion of Dr. Hassman's opinion. *See Houghton v. Comm'r, Soc. Sec. Admin.*, 493 F. App'x 843, 845 (9th Cir. 2012) (holding that internal inconsistency in a medical source's opinion was a specific and legitimate basis to reject the opinion); *Tristan v. Comm'r of Soc. Sec. Admin*, No. CV-20-02240-PHX-DWL, 2022 WL 1707953, *3 (D. Ariz. May 27, 2022) ("internal consistency[,] ... [whether] characterized as a flaw of 'consistency' or 'supportability,' ... serves as a permissible basis for discounting ... a medical opinion under the new SSA regulations.").

Further, the ALJ notes that there is a lack of evidence in the record revealing "any complications as a result of [Plaintiff's] tinnitus and hearing loss," (Doc. 13-3 at 33) which is also inconsistent with Dr. Hassman's opinion the Plaintiff has "limited hearing." (Doc. 13-3 at 38). As previously discussed, inconsistency between a medical opinion and medical evidence from other sources is a valid reason for an ALJ to reject the opinion. *See Morgan*,

- 11 -

F.3d at 600. (affirming the ALJ's rejection of a medical opinion because it was inconsistent with medical evidence from other sources in the record).

That the ALJ discussed the contradictory evidence pertaining to Plaintiff's hearing loss in a section of his decision separate from his evaluation of Dr. Hassman's medical opinion at Step Five is inconsequential, as the Court could "reasonably discern" the "path" of reasoning leading him to reject Dr. Hassman's opined limitation of "limited hearing" and exclude it from the RFC. *See Alaska Dept. of Env't. Conservation v. E.P.A.*, 540 U.S. 461, 497 (stating that if an ALJ's decision is made with "less[-]than[-]ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned."); *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (stating that an ALJ is only required to discuss and evaluate the evidence that supports his conclusion; he is not required to do so in a specific location within the decision).

Considering the foregoing, the Court finds the ALJ's conclusion that Dr. Hassman's medical opinion is partially persuasive to be supported by substantial evidence. As such, the ALJ did not err in this regard.

**C. Step Five Determination**

Plaintiff claims that the ALJ failed to meet his "burden at Step Five to show that a significant number of jobs exist in the national economy" that Plaintiff could perform given his RFC in light of the SSA's "significant rule changes regarding obsolete jobs." (Doc. 18 at 9). Plaintiff states that the SSA recently released Emergency Messages EM-24026 and EM-24027,[2] under which "114 [DOT codes for] occupations have been found obsolete and another 13 [DOT codes] for occupations require additional evidence to serve as substantial evidence." (Doc. 18 at 10). At the administrative hearing, the Vocational Expert ("VE") testified about three occupations existing in a significant number in the national economy that Plaintiff could perform in light of his RFC—personal clerk, benefits clerk 2, and information clerk. (Doc. 13-3 at 56–60). Plaintiff suggests that there exists an "apparent" conflict between the occupations about which the VE testified and the aforementioned EMs

---

[2] Both EMs are effective as of June 22, 2024. (Doc. 21 at 14).

1  that the SSA released, as the need for these occupations "has declined rapidly over the last
2  [47] years," raising "serious doubts about the viability of these occupations in the current
3  national economy." (Doc. 18 at 11). As such, Plaintiff argues that the ALJ erred in failing
4  to "elicit a 'reasonable explanation' for [this] conflict before relying on" the VE's
5  testimony to support his Step Five determination. (*Id.*)

6  However, the Ninth Circuit has held that, unless manifest injustice will otherwise
7  occur, when claimants are represented by counsel, all issues and evidence not raised at their
8  administrative hearings or to the Appeals Council may be deemed waived upon subsequent
9  judicial review. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *Lamear v. Berryhill*,
10 865 F.3d 1201, 1206 (9th Cir. 2017). The rationale behind this holding is that an ALJ, as
11 fact-finder—rather than the federal court—is the appropriate person to resolve conflicts
12 concerning vocational information and testimony. *Meanel*, 172 F.3d at 1115. Here,
13 Plaintiff's counsel did not raise any objection regarding the "apparent" conflict between
14 the VE's testimony and the SSA's EMs concerning obsolete DOT occupation codes at the
15 administrative hearing, nor to the Appeals Council when requesting review of Plaintiff's
16 claim. (Doc. 13-3 at 49–61; Doc. 13-5 at 71–72). Accordingly, because Plaintiff raised his
17 obsolescence argument to this Court for the first time, and because there is no indication
18 that manifest injustice would otherwise result, the Court finds Plaintiff's argument waived.

19 **D.  Further Proceedings**
20 Plaintiff asks the Court to remand this matter for further proceedings. The Court
21 declines to do so because the Court is affirming the ALJ's decision.

22 **IV.   CONCLUSION**
23 For the foregoing reasons,
24 **IT IS ORDERED** that the ALJ's decision is **AFFIRMED.**
25 / / /
26 / / /
27 / / /
28 / / /

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 17th day of March, 2025.

James A. Teilborg
Senior United States District Judge